WEBB, JUDGE:
Claimants brought this action for damages sustained to their real property due to the alleged negligent maintenance of a ditch on the westerly side of County Route 15, locally known as Berry Hill Drive, off of W.Va. Route 119, near Davis Creek. County Route 15 is a road maintained by respondent in Kanawha County. The Court is of the opinion to deny this claim for the reasons more fully set forth below.
Claimant Delbert Lockhart has resided at this location on County Route 15 for the past fifty-two years. County Route 15 is a secondary road that traverses in a north-south direction. The road abuts a hillside on the easterly side above claimants' residence and there is a hollow in the westerly side. In 1973, claimants placed a manufactured home on the property. Beginning in 1982, claimants remodeled the manufactured home into a two-story residence. Claimants installed a driveway approximately ninety to one-hundred feet in length which extends from the north to the south across and down the hillside in front of the residence to the bottom of the hill on the south side of the residence. This driveway has a large parking area which leads t o a do uble c ar g arage. Be tween t he g arage a nd t he r esidence, t here is a breeze-way. At the back of the residence, there is a patio that wraps around the north side of the house to the front of the house where it extends across the length of the house. Claimants also built a fifty-six foot canopy six to seven years prior to November 17, 1999, where they store their motor home. Claimants’ residence is situated between the bank of Davis Creek to the east behind their home and County *158 Route 15.[1] During the mid 1980's, claimants began placing fill dirt onto their property. Over a three-year period of time, claimants raised the level of their property b ehind their residence f rom a pproximately f our f eet a bove t he c reek t o fifteen to eighteen feet above the creek. They have not experienced any flood problems from Davis Creek.
Adjacent to claimants’property to the north on the hillside, there is an abandoned mine. The opening of the mine is at ground level at the rear of claimants’ residence. T his s tructure h as c aused p roblems o n o ccasion which are e xplained herein below.
Across County Route 15 on the west side of the road, there is a hollow with certain drainage structures. Above the hollow there are two residences in an area known as “Garden Heights,” one of which was built on fill material. Respondent has placed some large rocks on the side of the hill where the house built on the fill material is located. Below this area, about one-hundred-fifty to two-hundred feet, there is a drain in the hollow. This hollow is directly across County Route 15 from claimants’ property. During the 1980's, claimants allege that garbage was illegally dumped into the hollow. This occurred on many occasions. As a result of the illegal dumping, the drainage structure for the hollow became clogged during periods of excessive rainfall and water flowed across County Route 15 onto claimants’ properly. Claimant Delbert E. Lockhart was aware of and knew the identity of the individuals responsible for the illegal dumping. On several occasions, he contacted the West Virginia Division of Natural Resources regarding the illegal dumping problem, but he asserted that nothing was done to resolve the problem.
Claimants testified that on three specific occasions My 31, 1996; June 11, 1998; and June 13, 1998, water from the hollow flowed over County Route 15 and onto their property. Claimant Betty Lou Lockhart compared the flooding on their property to “Niagara Falls.” In 1996, water about seventeen inches high flowed onto the back patio and breeze-way between the house and garage. This flooding caused mud to flow onto the patio, into the breeze-way, into the kitchen area, and even into the foyer from the front door. This claim is based upon the damage to claimants property and residence as a result of the these occasions of flooding.
According to Mr. Lockhart, the original stone culvert under county Route 15 had fallen into a state of disrepair and had been clogged for about twelve years. In an attempt to alleviate the drainage problem caused by the illegal dumping, claimants’ son installed an eighteen-inch elbow pipe into the original stone culvert about one foot deep. Claimants’ son then cut holes in the top of the culvert pipe so *159 that water would flow through it and in the process keep trash and debris out of the pipe. At the end of the pipe, claimants’ son also placed a screen over the pipe. Mr. Lockhart acknowledged that the screen trapped trash, but he asserted that he and his family personally maintained the drain. Later, the eighteen inch pipe was washed out by flooding and Mr. Lockhart and his son replaced it with a thirty inch drain pipe.[2] Then, a catch basin, also known as a “clean out,” was constructed by Mr. Lockhart and his son to channel water into the creek and to alleviate the trash problem. In June or July of 1999, a stone wall was built on the road side of claimants’ property to divert water from their property into Davis Creek which is about fifty-five feet from the garage.
Claimants contacted respondent on approximately ten to twelve occasions in 1990 regarding this drainage problem. While respondent has taken measures to address the drainage problem, claimants assert that the problem still exists and water continues to come over the roadway onto their property. Claimants are of the opinion that the matter could be permanently resolved if respondent would install a walk-through pipe across their property to channel the water from the hollow across the road into Davis Creek instead of onto their property.
Due to the flooding on their property, claimants have had to replace marble tile, carpet, and the entry door. To prevent further flood damage to the garage area, claimants moved their garage door from the front side of the house to the end of the house. In addition, claimants anticipate having to install a retaining wall on the property. At one time, claimants had a fence line, but it has been washed out by the flooding. Claimants established that they have sustained damage in the amount of $11,859.62 as a result of the flooding. They do not have a homeowners insurance policy which would have covered these damages.
Moreover, in 1998, the main water line burst causing part of the bank on claimants’ property to slip. Claimants received $8,000 from the water company to compensate them for their losses at that time. Additionally, respondent installed piling at the edge of County Route 15 to stabilize its road adjacent to the hillside above claimants’ property.
On another occasion in March, 1999, the abandoned mine “blowed out” [s/c] and water began seeping out of it. Water went through the soil which was covering the mine entrance.. In an effort to eliminate water seepage from the mine, Mr. Lockhart got a backhoe and dug a ditch from the opening of the mine to the creek. The Division of Natural Resources and the Mine Reclamation Department investigated this incident. Since then, the Mine Reclamation Association reclaimed *160 the land and repaired the damages to claimants’ property caused by the landslide. At that time, the Abandoned Mine Association installed piling adjacent to claimants’ driveway to stabilize the hillside adjacent to the driveway.
The position of respondent is that it took immediate corrective measures as soon as it received notice' regarding the drainage problem on County Route 15. Highway Administrator Charles E. Smith visited claimant’s property during the 1980's to install a driveway drain and to clean debris out of the inlet end of the pipe. Before Mr. Lockhart and his son installed their drainage system, Mr. Smith indicated that there were no records of drainage problems. Additionally, respondent has repaired three slides on County Route 15 during the three years prior to the November 17, 1999, hearing. According to the then acting Saint Albans Supervisor David Charles Starcher, pilings were installed adjacent to the site in question during Christmas of 1996.
In the spring of 1997, respondent’s employees completed a drainage analysis and determined that it was necessary to install a thirty-six inch by forty feet smooth interior pipe across the road and on top of the existing culvert to address the drainage problem on claimants’ property. This pipe is about four feet deep. In addition, respondent installed an overflow pipe near the top of the existing culvert and down into the catch basin. The catch basin, located just below the road, connects the pipes constructed by claimant and additions by respondent. The additions made by respondent’s employees tied the two pipes together because claimants’ pipe was so much lower than the one that it added to the thirty-six inch smooth interior p ipe. Respondent’s employees also added onto the cinder block basin built by Mr. Lockhart and his son. Currently, the pipe is one hundred seventy-seven feet from the water-hole to the point where it discharges into Davis Creek. Further, respondent advised claimants to contact the Division of Natural Resources regarding the illegal garbage dumping in the hollow.
Respondent’s e mployees h ave c leaned de bris f rom t he c ulverts a nd a Iso removed the portion of chain link fence placed by claimants' son which was covering the drainage pipe. Respondent’s employees believed that the covering was not necessary. According to respondent’s expert in geotechnical engineering, Dr. George Alan Hall, the construction of the riser pipe trapped water and the water ponded, creating a sediment dam off the State’s right of way. During a visit to the site in 1998, Mr. Smith described the water as “sitting like a pond.” Water would have to build up in order to flow through the pipe. Dr. Hall testified that the pipe claimant installed could not carry the same amount of water the original box culvert carried, and, in fact, claimants’ drainage project exacerbated the problem. The velocity of the water drew in trash which was then trapped by the screen, diminishing the pipe’s flow capacity.
According to Dr. Hall, there were two sources of water; the mine and the hollow. These sources of water were causing the damage to claimants’ property. Dr. *161 Hall visited the site in August 1998, September 1998, and November 1999 to conduct an examination of the property in preparation for testifying before this Court. Dr. Hall described the drainage system in detail that exists in the hollow, under County Route 15, and through claimants’ property to Davis Creek. He explained that the riser structure or pipe placed by the claimant actually created a sediment area with ponding occurring behind the structure. The culvert pipe placed by c laimant is a t hirty-inch pipe w hich c annot c arry t he flow o f w ater from t he original box culvert. Thus, water backs up and ponds at the upper end in order to push water through his system to flow to Davis Creek. Dr. Hall informed the Court that there had not been any problems with drainage in the area until the claimant installed his pipe. After that point, sediment became trapped because the water was being ponded. Then the addition of the riser by claimant compounded the problem and made it worse. The fencing placed at the inlet portion of respondent’s thirty-six inch pipe acts as a trash rack so the flow of water through it is diminished. The length of claimants’ pipe at 177 feet also reduces the capacity of the pipe due to the friction of the water. The cure in his opinion is for claimant to install a conduit pipe with a larger capacity than the box culvert originally installed by claimant, which would resolve the capacity problem.
Dr. Hall also explained that the claimants’ property is subject to the flow of water from two drainage areas, i.e., the hollow and the mine. The trash dumped by various people in the area above the hollow for which respondent has no responsibility has caused a portion of the problem and the actions taken by the claimants themselves altogether created the flood problems experienced by the claimants.
The Court has held that respondent has a duty to provide adequate drainage of surface water, and drainage devices must be maintained in a reasonable state of repair. Haught vs. Dept. of Highways, 13 Ct. Cl. 237 (1980). In claims of this nature, the Court will examine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. Cl. 97 (1996).
In the instant claim, claimants have failed to established that respondent maintained the drainage structures on the east side of County Route 15, in Kanawha County, in a negligent manner. The Court is of the opinion that respondent, once on notice of the situation on County Route 15, took immediate and reasonable action to prevent any further drainage onto claimants’ property from e xcess water flowing across the road onto their property. The terrain in this area of County Route 15 places claimants’ property in a low place which is the natural drainage area. In addition, t he C ourt c oncludes t hat t here a re m any f actors, other t han t he a ctions taken by respondent, which have brought about the drainage problems and the resulting floods causing the damages to claimants’ property. Consequently, there is *162 insufficient evidence of negligence on the part of respondent upon which to base an award.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim. ■
Claim disallowed.

 At the November 17, 1999, hearing, claimant Delbert E. Lockhart stated that one of his neighbors informed him that his property is in an area that is considered to be a flood zone by the Federal Emergency Management Association .

 While Mr. Lockhart asserted at the hearing that the pipe was thirty-six inches, respondent’s expert in geotechnical engineering, Dr. George Alan Hall, testified that he measured the pipe and found it to be only thirty inches.